# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **CHRISTY HELLUMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-07-S-2347-NW** |
| | ) | |
| **TIFFIN DOOR COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Christy Hellums, asserts claims against her former employer, Tiffin Door Company, Inc. ("Tiffin Door"), pursuant to the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611 *et seq.*[1]  The case presently is before the court on defendant's motion to dismiss plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.[2]

## I.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).  "[O]nce a claim has been

---

[1]*See* doc. no. 1 (Complaint).

[2]Doc. no. 5.

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* — U.S. — , 127 S. Ct. 1955, 1969 (2007) (citations omitted).  These factual allegations need not be detailed, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986), and *Sanjuan v. American Bd. of Psychiatry and Neruology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)) (bracketed alteration in *Twombly*). Thus, although notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc*., 253 F.3d 678, 683 (11th Cir. 2001).

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).  Viewed in this manner, the factual allegations of

the complaint "must be enough to raise a right to relief above the speculative level .
. . ." *Twombly,* 127 S. Ct. at 1965 (citations omitted).  Stated differently, the plaintiff
must plead facts sufficient to "nudge[] [her] claims across the line from conceivable
to plausible . . . ."  *Id.* at 1974.

## II.  ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff, Christy Hellums, alleges that she worked for defendant from August
of 2003 until June 6, 2007.[3]  Throughout the duration of her employment, she
suffered from migraine headaches and polycystic kidney disease.[4]  Plaintiff's
migraine headaches would at times become so severe that she would vomit whenever
she turned her head.[5]  When plaintiff needed to be absent from work due to her
migraines, she provided medical documentation to Charles Adams, her direct
supervisor.[6]

In 2006, Adams counseled plaintiff about the number of her absences.  Plaintiff
informed Adams that, "if she needed to be placed on ongoing FMLA leave that she
would do so because she had all of her medical documentation."[7]  Adams told
plaintiff he would "check into it," but that he needed her to be at work, and plaintiff

---

[3]Complaint, at ¶ 9.

[4]*Id.* at ¶ 10.

[5]*Id.* at ¶ 12.

[6]*Id.* at ¶ 13.

[7]*Id.* at ¶ 14.

heard nothing further from Adams on the matter.[8]

On October 1, 2006, plaintiff suffered injuries in an automobile accident that required her to be absent from work for approximately ten weeks.[9]  Plaintiff applied for and received approved FMLA leave during her ten-week absence.[10]   While plaintiff was on leave, some co-workers informed her that "Adams had made it known that he did not like [her] being off from work for so long and that he intended to terminate her employment."[11]  Plaintiff returned to work in mid- to late-December of 2006.[12]  Tiffin Door held plaintiff's former position in cabinet production open until the week she was scheduled to return to work from FMLA leave, but upon her return, Adams reassigned plaintiff to a position in the Standing Booth, which involved work that was "much dirtier" and exposed plaintiff to stain fumes that exacerbated her migraines.[13]  Adams also treated plaintiff "in a sarcastic and rude manner" after she returned to work.[14]

Two days after plaintiff returned to work, Adams confronted her for her alleged

---

[8]Complaint, at ¶¶ 15-16.

[9]*Id.* at ¶ 17.

[10]*Id.* at ¶ 18.

[11]*Id.* at ¶ 20.

[12]*Id.* at ¶ 21.

[13]Complaint, at ¶¶ 22-23.

[14]*Id.* at ¶ 25.

failure to work during her allotted break times.[15]  Later that same day, after work hours, plaintiff approached Adams and requested to view her personnel file, but her request was denied.[16]  The following morning, plaintiff again requested to see her personnel file.  Adams responded by issuing a written Incident Report that accused plaintiff of failing to work during her allotted break time, and of abandoning her job by approaching him the previous day to view her personnel file.[17]

In March of 2007, plaintiff was absent from work for two weeks because of kidney stones and her other kidney condition.[18]  The remaining allegations of plaintiff's complaint relate what occurred in conjunction with, and following, this period of absence.

33.    On or about March 2, 2007, the Plaintiff was scheduled for surgery to remove the kidney stones and she called Adams to update him about her condition.

34.    Adams informed the Plaintiff via telephone that he would place her on FMLA leave for the two (2) weeks she was out with the kidney issues.

35.    The Plaintiff returned to work on March 12, 2007.

36.    On March 19, 2007, the Plaintiff learned that Adams had not placed her on FMLA leave and that instead the two (2) weeks of

---

[15]*Id.* at ¶ 26.

[16]*Id.* at ¶¶ 27-28.

[17]*Id.* at ¶ 29.

[18]Complaint, at ¶ 31-32.

absences had been counted against her attendance record.

37.     The Plaintiff reminded Adams that he had said he would place her on FMLA leave while she was out and he replied she had to "ask" for the leave.

38.     The Plaintiff then asked Adams for the necessary papers to have the FMLA time submitted and approved.  Adams responded by walking away from the Plaintiff and saying that he would "think about it."

39.     The next day, March 20, 2007, the Plaintiff approached Van Tiffin, the owner of the Defendant, and informed him of the situation with her kidney surgery and Adams' failure to have placed her on FMLA leave or to provide her with the requested paperwork.

40.     Van Tiffin replied that since she was already back at work that they just would not count the two (2) weeks against her.

41.     The Plaintiff then informed Van Tiffin that she had follow up appointments with a urologist and also with a neurologist for her migraines and that she wanted those visits to be covered under FMLA leave.

42.     Van Tiffin replied only that he would not count those days against her either, but that he expected her to be at work.

43.     Van Tiffin never provided the Plaintiff with any FMLA request forms, paperwork or documentation for either of her medical conditions.

44.     In late May 2007 the Plaintiff suffered severe migraines.

45.     On May 31, 2007, the Plaintiff left work with a severe migraine causing her to see her physician and obtain medical care.  Per her physician's instructions, the Plaintiff was unable to work on June 1, 2007.

46.    On June 2, 2007, the Plaintiff's migraine condition caused her to receive medical treatment at the Emergency Room.

47.    Over the course of the weekend, due to the severity of the migraine, the Plaintiff received medical treatment from her physicians and the Emergency Room a total of three (3) times and she was unable to work until June 6, 2007.

48.    The Plaintiff reported her medical condition and treatment to Adams throughout this time.

49.    The Plaintiff returned to work on June 6, 2007, at which time Adams informed her that Van Tiffin had inquired about her absence earlier that week and had informed Adams that they did not need her anymore.

50.    The Plaintiff's employment was terminated on June 6, 2007.

51.    On June 8, 2007, the Plaintiff went to see Van Tiffin and to provide him with her doctors' excuses. She informed Van Tiffin that she thought her absences should be covered under FMLA.

52.    Van Tiffin replied that he was not going to "mess with it," that it was over and the[n] turned and walked away.[19]

Plaintiff claims that Tiffin Door violated the FMLA when it:  (1) refused to provide her with requested leave forms, or documentation to submit for approved leave, in 2006, in relation to her migraine condition; (2) retaliated against her after she returned to work in December 2006 by "assigning her to [a] less desirable position and subjecting her to unwarranted scrutiny and discipline"; (3) refused to

---

[19]*Id.* at ¶¶ 33-52.

provide her with requested leave forms, or documentation to submit for leave, in March of 2007, in relation to her kidney conditions; (4) "refused to give [her] FMLA leave time for her kidney condition or her migraine condition despite her repeated requests to apply for same"; (5) terminated her employment in June of 2007; (6) refused to provide her with FMLA forms following her termination, thereby "enforcing" her termination.[20]

## III. ANALYSIS

Under the FMLA, an eligible employee[21] is entitled to up to twelve weeks of leave each year to care for a serious health condition of the employee, or the employee's child, spouse, or parent.  See 29 U.S.C. § 2612(a)(1).[22]  The FMLA

---

[20]*Id.* at ¶¶ 57-65.

[21]An "eligible employee" is defined as "an employee who has been employed — (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A).

[22]29 U.S.C. § 1612(a)(1) establishes an eligible employee's entitlement to leave as follows:

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
(B) Because of the placement of a son or daughter with the employee for adoption or foster care.
(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter  or parent has a serious health condition
(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

further provides that:

> any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave —
>
> > (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or
> >
> > (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1).  Such entitlements are limited by a subsequent section, providing that an eligible employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B).

To secure the availability of the foregoing entitlements, Congress declared it "unlawful for any employer to interfere with, restrain, or deny the exercise of[,] or the attempt to exercise, any right provided under this subchapter [of the FMLA]."  29 U.S.C. § 2615(a)(1).  In addition, Congress declared it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]," 29 U.S.C. § 2615(a)(2), or because such individual

> (1) has filed any charge, or has instituted or caused to be instituted any proceedings, under or related to [the FMLA];

(2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under [the FMLA]; or

(3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under [the FMLA].

29 U.S.C. § 2615(b); *see also* 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.").

Consistent with the foregoing statutory provisions, the caselaw interpreting the FMLA recognizes two types of claims for alleged violations of the Act: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act . . . and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. . . ." *Strickland v. Water Works and Sewer Board of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) (emphasis added) (citations and footnote omitted). *Accord O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000). The elements of proof for each type of claim are different.

To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). In contrast, to succeed on a retaliation claim, an employee must demonstrate that his

employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. *King*, 166 F.3d at 891. In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Id*. . . .

When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, we apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for evaluating Title VII discrimination claims. *See Brungart v. BellSouth Telecomm. Inc*., 231 F.3d 791, 798 (11th Cir. 2000). In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000). . . .

*Strickland*, 239 F.3d at 1206-07 (emphasis added).

The court concludes plaintiff's complaint contains sufficient factual allegations to support the elements of these legal claims. Defendant's arguments to the contrary are unavailing.

Defendant first argues that plaintiff's complaint does not state a claim for retaliatory termination under the FMLA because plaintiff was absent from work more than twelve weeks during the twelve-month period immediately preceding her termination. Defendant's argument is only *factually* accurate. Plaintiff *wa*s absent for ten weeks beginning in October of 2006, then for two more weeks in March of

2007, then for several more days in June of 2007.  These facts, however, are not necessarily fatal to her claim.  As plaintiff points out, there is more than one permissible method for calculating the twelve-month period during which the FMLA entitles an employee to twelve weeks of leave.  The regulations implementing the FMLA state that

> [a]n employer is permitted to choose any one of the following methods for determining the "12-month period" in which the 12 weeks of leave entitlement occurs:
>
> > (1) The calendar year;
>
> > (2) Any fixed 12-month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary" date;
>
> > (3) The 12-month period measured forward from the date any employee's first FMLA leave begins; or,
>
> > (4) A "rolling" 12-month period measured backward from the date an employee uses any FMLA leave . . . .

29 C.F.R. § 825.200(b).  The option chosen by the employer must be "applied consistently and uniformly to all employees."  29 C.F.R. § 825.200(d)(1).  If the employer fails to select an option, then "the option that provides the most beneficial outcome for the employee will be used."  29 C.F.R. § 825.200(e).  Discovery is necessary to determine which of these calculation methods, if any, Tiffin Door "consistently and uniformly [applied] to all employees."

Discovery also is necessary to determine whether plaintiff actually received approved FMLA leave for her absences in March and June of 2007. It is true, as defendant points out, that an employer is not *always* required to designate an employee's leave as "FMLA leave" in order for it to count toward the twelve weeks allowed under the FMLA. *See Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 88-93 (2002). Instead, a *fact-based* inquiry is required to determine whether the employee was prejudiced by her employer's failure to give notice of how the leave would be considered. *See id.* A fact-based inquiry should not be resolved by a motion to dismiss for failure to state a claim upon which relief can be granted.

Defendant also argues that plaintiff's interference claims must fail because she was neither denied any benefit to which she was entitled under the FMLA, nor prejudiced by any of defendant's actions; and, that her non-termination-based retaliation claims must fail because she did not suffer any adverse employment action, and because any adverse actions taken against her were motivated by legitimate, non-discriminatory reasons. Again, these arguments would be more properly raised in a motion for summary judgment, but only *after* the conclusion of discovery. Plaintiff's complaint — the operative document for purposes of evaluating defendant's motion to dismiss — states factual allegations that are sufficient to support plaintiff's FMLA claims for retaliation and interference.

## IV.  CONCLUSION AND ORDER

Plaintiff's complaint contains sufficient factual allegations to support her claims for relief under the FMLA.  Accordingly, defendant's motion to dismiss is DENIED.  Defendant is ORDERED to file an answer to plaintiff's complaint on or before April 21, 2008.

DONE this 7th day of April, 2008.

_____
United States District Judge